IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,
Plaintiff,

v.                                                          Case No. 06–CR–40057–JPG–9

ROBERT SLOAT,
Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Robert Sloat's Motion for Compassionate Release. (ECF No. 671). For the reasons below, the Court **DENIES** Sloat's Motion.

### I.   PROCEDURAL & FACTUAL HISTORY

#### A.  The Conviction

In 2006, a federal grand jury in this District indicted Sloat for conspiring to manufacture and distribute at least 500 grams of methamphetamine. (Superseding Indictment 1–2, ECF No. 26). He pleaded guilty the year after, (Plea Agreement 1, 16, ECF No. 174); and the Court sentenced him to a 297-month term of imprisonment, (Judgment 2, ECF No. 269). The Court later reduced that sentence to 235 months because of a retroactive change in sentencing law. (Order 2, ECF No. 519). He is currently incarcerated at Federal Correctional Institution ("FCI") Greenville in Illinois. (Def.'s Mot. for Compassionate Release at 6).

#### B.  The Presentence Investigation Report

Before sentencing, the Court considered the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office, which provided information about the nature and circumstances of the offense and Sloat's background. (PSR 1, ECF No. 262).

According to the PSR, Sloat was one of "[t]he primary cooks" involved in a nine-person conspiracy to manufacture and distribute methamphetamine. (*Id.* at 4). He first "began stealing anhydrous ammonia for methamphetamine cooks in 1999" and started "cooking manufacturing methamphetamine on his own in 2000." (*Id.* at 7). He then taught several others, including his two brothers. (*Id.*). He also introduced his longtime girlfriend to the conspiracy and taught "her how to inject methamphetamine," which "reportedly occurred shortly after he was released on parole from the Illinois Department of Corrections." (*Id.* at 8). Another individual told law-enforcement officers that Sloat introduced methamphetamine to him when he was just 14 years old: "he immediately became 'hooked.'" (*Id.* at 9). "Sloat's total relevant conduct" involved over fifteen kilograms of methamphetamine. (*Id.* at 10).

Sloat also had fifteen prior convictions before being indicted here, including a 2005 conviction for domestic battery when he beat a woman "in the head with his fist, pulling her hair, and kneeing her ribs"; a 2005 conviction for theft after he was observed opening "audio equipment packages with a knife and conceal[ing] the items in another pants pocket"; and at least five other drug offenses. (*Id.* at 13–20).

### C.  Sloat's Motion for Compassionate Release

In 2020, Sloat moved for a sentence modification under 18 U.S.C. § 3582(c)(1)(A), also called *compassionate release*. (Def.'s Mot. for Compassionate Release at 1). He contends that serious medical conditions—hypertension, morbid obesity, a history of smoking and drug abuse, and a weakened immune system because of cortisone injections—make him especially vulnerable to the COVID-19 virus. (*Id.* at 4–5).

The COVID-19 virus, of course, is now a global pandemic. At FCI Greenville, 195 inmates currently have COVID-19; 431 have recovered; and none have died. *Coronavirus*, Bureau of

Prisons (last visited Dec. 3, 2020).[1] In brief, Sloat argues that his increased risk of experiencing serious complications if he contracts COVID-19 is an *extraordinary and compelling reason* warranting his release. (Def.'s Mot. for Compassionate Release at 6–7). He also contends that he no longer presents a public-safety risk, evidenced by a "minimal disciplinary history" and the completion of "numerous Department of Labor apprenticeship programs including 8,080 hours of sewing, 6,026 hours of Quality and Assurance training and 578 hours of sewing machine mechanic training." (*Id.*).

## II.   LAW & ANALYSIS

The Court recognizes that compassionate release is appropriate for some defendants considering the COVID-19 pandemic. Even so, the defendant bears the burden of showing *not only* that he faces an increased from the virus, *but also* that incarceration is no longer necessary to advance the purposes of punishment (i.e., justice, deterrence, incapacitation, and rehabilitation). Sloat failed to meet that burden.

### A.  Legal Standard

District courts generally "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). That said, an exception exists for when "extraordinary and compelling reasons warrant such a reduction . . . ." *Id.* § 3582(c)(1)(A)(i). Even then, however, the sentencing judge must still "consider[] the factors set forth in section 3553(a) to the extent that they are applicable . . . ." *Id.* § 3582(c)(1)(A). The burden of proof rests on the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

---

[1]     *Available at* https://www.bop.gov/coronavirus.

The § 3553(a) factors include:

(1)     the nature and circumstances of the offense and the history and characteristic of the defendant;

(2)     the need for the sentence imposed—

    (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)     to afford adequate deterrence to criminal conduct;

    (C)     to protect the public from further crimes of the defendant; and

    (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the kinds of sentence and the sentencing range established for—

    (A)     the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . or;

    (B)     in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . .;

(5)     any pertinent policy statement—

    (A)     issued by the Sentencing Commission . . .; and

    (B)     that . . . is in effect on the date the defendant is sentenced[;]

(6)     the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

— 4 —

"The judge need not address every factor 'in checklist fashion, explicitly articulating its conclusions regarding each one.' " *See United States v. Kappes*, 782 F.3d 828, 845 (7th Cir. 2015) (quoting *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008)). It is enough to "simply give an adequate statement of reasons, consistent with § 3553(a), for thinking" that a sentence modification is, or is not, appropriate. *See Shannon*, 518 F.3d at 496.

### B. The § 3553(a) Factors Weigh Against Compassionate Release

The Court acknowledges the particular danger posed by the COVID-19 pandemic to prisoners, who live in close quarters and often cannot practice social distancing. "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The Bureau of Prisons is in the best position to know which inmates are most vulnerable to infection and whether they still pose a public-safety risk. And since March 2020, BOP has released over 8,000 inmates that it has identified as "suitable for home confinement." *Coronavirus*, BOP (last visited Dec. 3, 2020).[2] Although not bound by any BOP determination, the Court gives BOP some deference in this area "considering [its] statutory role, and its extensive professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597.

With that in mind, the § 3553(a) factors weigh against a sentence modification here. Although the Court commends Sloat for the strides made while incarcerated, his extensive criminal history and the seriousness of the underlying offense caution against his early release. True enough, people can change. But characterizing Sloat as "a non-violent drug offender," as he does in his Motion, would ignore his violent past. Sloat has been in and out of prison for most of his adult life. Although participation in Department of Labor programs may have provided him with

---

[2]     *Available at* https://www.bop.gov/coronavirus/.

some tools to reacclimate in society, it is not, by itself, indicative of a change of heart. Rather, the Court must consider the totality of the circumstances in determining whether early release is appropriate, while prioritizing public safety. Put differently, even if Sloat's medical conditions make him more vulnerable to the COVID-19 virus, his continued incarceration remains necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to ensure the safety of the community, and to deter Sloat and others from committing further crimes.

## III.   CONCLUSION

The Court **DENIES** Defendant Robert Sloat's Motion for Compassionate Release.

**IT IS SO ORDERED.**

**Dated: Thursday, December 3, 2020**

**S/J. Phil Gilbert**
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**